**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VICTORIA LEA STONE,

        Plaintiff,

            vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:10-cv-236

Weber, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Victoria Lea Stone filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes.  Pursuant to local practice, this case has been referred to the undersigned for initial consideration and a report and recommendation.  28 U.S.C. §636(b).  As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

On June 17, 2005, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB) alleging a disability onset date of December 1, 2000, due to migraine headaches, panic attacks, anxiety and psychosis. (Tr. 94-98, 128, 813-814).  She was 30 years old at the time of her alleged disability. (Tr. 94).  On January 23, 2008, after Plaintiff's claims were denied initially and upon

reconsideration, (Tr. 30-31, Tr. 36-45), he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Tr. 46). On October 8, 2008, December 10, 2008, and April 16, 2009, evidentiary hearings were held in Cincinnati, Ohio, at which Plaintiff was represented by counsel. (Tr. 805-935). Plaintiff testified at the first and third hearings; George Rogers, Ed.D., a consulting medical expert ("ME Rogers"), testified at all three hearings and, Janet Chapman, an impartial vocational expert ("VE Chapman"), testified at the last hearing. (*Id.*).

On May 19, 2009, ALJ Smith entered her decision denying Plaintiff's SSI and DIB applications. (Tr. 14-28). The Appeals Council denied her request for review. (Tr. 8-10). Therefore, ALJ Smith's decision stands as the Defendant's final determination.

ALJ Smith's "Findings," which represent the rationale of the decision, were as follows:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2004.

2.    The claimant has not engaged in substantial gainful activity since December 1, 2000, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*

3.    The claimant has the following severe impairments: bipolar disorder, anxiety/depression, drug abuse, and headaches (20 CFR 404.1520(c) *et seq.* and 416.920(c)).

      ……………………

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

      ……………………

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of

work at all exertional levels but with the following nonexertional limitations: she is limited to performing simple and multiple step tasks in situations where duties are relatively static and changes can be explained to her. The claimant should avoid hazards such as machinery and heights.

……………………

6.  The claimant is capable of performing past relevant work as a telephone solicitor.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

……………………

7.  The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2000 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 19-27).  Thus, ALJ Smith concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.  (*Id.*).

On appeal to this Court, Plaintiff maintains that ALJ Smith erred by: 1) dismissing the findings of Dr. Colmenares and ME Rogers; 2) finding that Plaintiff does not meet Listings 12.03 and 12.04; 3) inadequately assessing Plaintiff's credibility; and 4) failing to find that Plaintiff's migraine headaches prevented her from performing her past relevant work as a telephone solicitor (or other jobs).  (Doc. 11).

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York,* 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen,* 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the Court should consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency ("SSA") is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimants impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimants impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past

relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. §404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy.  42 U.S.C. §423(d)(1)(A).  In this case, Plaintiff alleges that the identified errors at the fourth and fifth steps of the sequential analysis require this Court to reverse the Commissioner's decision.

### B.  The ALJ's Rejection of Dr. Colmenares' and ME Rogers' Opinions

Plaintiff complains that ALJ Smith failed to afford adequate weight to the opinions of the following medical experts:  physician, Silvia Colmenares, M.D. ("Dr. Colmenares") and ME Rogers.  20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.*  (emphasis added).  *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).  Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he

5

sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527(d)(2).  Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-31 (6th Cir. 1990) (affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).

### 1.  Dr. Colmenares

On March 11, 2008, Dr. Colmenares, a psychiatrist, completed a Mental Residual Functional Capacity evaluation ("RFC") on Plaintiff's behalf.  (Tr. 798-800).  On that form, Dr. Colmenares explained:

> Patient has a history of mood symptoms since her early 20s, which MARKEDLY worsened after giving birth to her 2nd child 8 years ago – since then, she has experienced recurrent, severe psychotic breaks, during which she becomes intensely delusional, religiously and sexually-preoccupied, and vaguely suicidal.  Fortunately she responds well to Zyprexa, but the medication <u>side effects</u> do impair her ability to sustain attention continuously, and cause chronic tiredness/sleepiness.  She has been unable to afford her medication lately, due to not having a medical card.

(Tr. 800).  Dr. Colmenares opined that Plaintiff is markedly limited in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest period; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers

without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and setting realistic goals or making plans independently of others. (Tr. 799). As a result, Dr. Colmenares concluded that Plaintiff was unemployable for at least twelve months. (Tr. 800).

In her decision, ALJ Smith rejected Dr. Colmenares' assessment of Plaintiff's mental limitations:

> [A]s of the time that he [sic] was completing the mental assessment in May 2008, Dr. Colmenares had not yet achieved the status of being a "treating physician" given the limited amount of time he had spent with the claimant to that point. Moreover, he did not identify any sources for his [sic] information on the claimant other than what he was told by the claimant herself. Dr. Colmenares never discussed the claimant's history of noncompliance and drug seeking behavior, nor did he demonstrate recognition of the cause for the claimant's recent psychiatric hospitalization or of the marked improvement the claimant had shown during that hospitalization. Even after establishing a treating relationship with the claimant, he still did not discuss her noncompliance and drug seeking issues, but did confirm the significant improvement she had shown by August 2008. Because of these inconsistencies and weaknesses within the analysis provided by Dr. Colmenares, his May 2008 assessment is rejected.

(Tr. 26). Plaintiff contends that the limitations found by Dr. Colmenares were supported by ample objective evidence, including: information from Plaintiff's family members and Plaintiff regarding her mental condition (Tr. 644, 646); that Plaintiff had been off her medications for a time before being hospitalized and that she showed rapid improvement once she had the opportunity to restart her Zyprexa (Tr. 644, 647); and that Plaintiff is significantly limited by her prescribed medications' side effects (Tr. 800). However, although the opinions of treating physicians must be considered, ultimately the determination of a claimant's RFC is "reserved to the Commissioner." 20 C.F.R.

§404.1527(d)(2), §1527(e)(2).

In rejecting the limitations assessed by Dr. Colmenares, ALJ Smith explained that, because she did not discuss Plaintiff's noncompliance with psychotherapy and drug-seeking issues, but did confirm the significant improvement she had shown by August 2008, ALJ Smith found that these "inconsistencies and weaknesses with the analysis," supported her rejection of Dr. Colmenares' assessment. (*See* Tr. 26). ALJ Smith went on to point out that Dr. Colmenares' assessment of Plaintiff's functional mental abilities is not well supported by detailed medical findings and is not compatible with other substantial evidence when viewed in the context of the entire record. (*Id*). By way of example, ALJ Smith provided that Dr. Colmenares' assessment was completed immediately after Plaintiff's hospitalization for a psychotic disorder. (Tr. 643-657). ALJ Smith's rejection of Dr. Colmenares' assessment satisfies the "good reasons" requirement. The extreme limitations found by Dr. Colmenares are not supported by objective medical evidence. Rather, I conclude from a review of the same medical records that substantial evidence supports ALJ Smith's assessment.

The record does reflect a diagnosis of bipolar disorder, anxiety/depression, drug abuse and headaches; however, the record does not support Dr. Colmenares' extreme assessment of Plaintiff's negative mental abilities. A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services,* 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009).

During a consultative psychiatric evaluation of Plaintiff on September 9, 2005,

Kevin Eggerman, M.D. ("Dr. Eggerman"), reported that Plaintiff had been free of psychiatric hospital admissions since becoming compliant with her prescription medication over the previous three years. (Tr. 311, 315). On November 11, 2005, and May 19, 2006, John S. Waddell, Ph.D. ("Dr. Waddell"), and Melanie Bergsten, Ph.D. ("Dr. Bergsten"), the reviewing state agency psychologists, found that Plaintiff was capable of performing simple and multiple step tasks in situations where duties are relatively static and changes can be explained to her. (Tr. 640). ALJ Smith also noted that the record does not show that the Plaintiff has lost the ability to ambulate effectively nor that she has lost the effective use of her hands and arms for gross and fine manipulation. (Tr. 22).

ALJ Smith does acknowledge that although Plaintiff experiences restrictions in activities of daily living, social functioning, concentration, persistence, or pace, said restrictions are merely mild to moderate in nature. (Tr. 634). Moreover, in regards to episodes of decompensation, Plaintiff has experienced no episodes of decompensation which have been of extended duration. (*Id*). This lack of decompensation is consistent with the fact that Plaintiff has never been psychiatrically hospitalized for an extended period of time. Although Plaintiff was in the hospital for approximately three days in March 2008 for a psychotic disorder, that was a relatively brief hospitalization that was directly related to her failure to take prescribed psychotropic medications. (Tr. 643-657).

In addition, ALJ Smith explains that the extreme limitations Dr. Colmenares detailed in her 2008 assessment were inconsistent with statements made by Plaintiff attributing many of her mental problems to her volatile marriage (and divorce) and that

9

on April 21, 2008, and August 6, 2008, Plaintiff claimed that she was no longer having emotional or mental symptoms and was "stable on medication". (Tr. 791, 793). *See* 20 C.F.R. §404.1527(d)(4) ("*Consistency.*" Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Even if the Court were to assume that Dr. Colmenares' opinions were consistent with other record evidence, it is not necessarily enough to warrant reversal; "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Dr. Colmenares failed to provide a detailed explanation as to her extreme limitations in view of the absence of any focal deficit of motor power or reflexes, and the generally conservative nature of Plaintiff's treatment. The Court also finds it important to note that Dr. Colmenares failed to put in her explanation that Plaintiff had not actively pursued psychotherapy or substance-abuse treatment. (Tr. 26). *See* 20 C.F.R. §404.1527(d)(3) ("the better an explanation a source provides for an opinion, the more weight we will give that opinion."). Dr. Colmenares simply checked boxes indicating that Plaintiff's ability to perform certain work-related activities with regularity was markedly limited. (Tr. 799). Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### 2. **ME Rogers**

Plaintiff asserts that ALJ Smith additionally erred in rejecting the opinion of consulting medical psychologist, ME Rogers, who opined that Plaintiff was disabled. She alleges that "ME Rogers assessed mood disorders and psychosis" which assessment ALJ Smith improperly ignored. (Doc. 18 at 1).

10

Prior to addressing Plaintiff's arguments, the Court notes that ALJ Smith did not, in fact, completely reject ME Rogers' opinions.  Although ALJ Smith did not find objective medical evidence to support a *diagnosis* of psychosis and bipolar disorder, ALJ Smith determined that Plaintiff's impairments included *symptoms* of bipolar disorder, depression, and anxiety.  (*See* Tr. 21).  ALJ Smith also found that Plaintiff has measurable work limitations resulting from headaches, which constituted a severe physical impairment.  (Tr. 19, 21, 26).  However, ALJ Smith carefully explained that Plaintiff's noncompliance with medical treatment, substance abuse and drug-seeking behavior are her predominant issues.  (*See* Tr. 21.).

ALJ Smith's primary reason for affording limited weight to ME Rogers' testimony was due to his inconsistent testimony at the October 8, 2008, December 10, 2008, and April 16, 2009 hearings.  (Tr. 23).  Specifically, ME Rogers' testimony conflicted with the objective medical evidence in regards to Plaintiff's drug-seeking behavior and her noncompliance with medical treatment.  At the hearing held on October 8, 2008, ME Rogers testified that there were references in Plaintiff's treatment record that gave rise to a *suspicion of drug-seeking behavior* and also explained that individuals with her similar mental illness symptoms often *fail to comply with prescribed medical care.*  (Tr. 842, 845, 847).  On December 10, 2008, ME Rogers testified that Plaintiff had been subjected to factors that often lead to noncompliance with medication, including a lack of medical insurance to pay for her medicine and an underlying psychological disorder that caused her not to take her prescribed medication, *but that since July 2008, Plaintiff had been taking her medication consistently.*  (Tr. 868-870).  ME Rogers also testified that although Plaintiff visited the emergency room several times, each visit took place at

the same hospital and that this type of behavior *would not be expected from an individual who is engaged in drug seeking.* (Tr. 875-876).  At the April 16, 2009 hearing, when questioned about drug seeking, ME Rogers testified that this appears to be related more to Plaintiff's headaches than an attempt to abuse drugs.  (Tr. 918-919). ME Rogers stated that he did not *see in the record a strong indication of Plaintiff's misuse of drugs.* (Tr. 847, 920).

This latter testimony is inconsistent with the numerous references in the medical record to Plaintiff's drug-seeking behavior and her noncompliance with medical treatment and is internally inconsistent (*See* italics above).  For instance: 1) during a hospitalization on December 11, 2001, it was noted that Plaintiff was drinking alcohol to diminish her anxiety and nervousness and that a month before this admission she had been consuming approximately 6 beers per day (Tr. 194-195); 2) On November 20, 2006, treatment records from consulting neurologist, Arthur Hughes, M.D. ("Dr. Hughes"), stated that Plaintiff had been using too much Vicodin and was not cooperating in treatment (Tr. 331); 3) during an emergency room visit on July 9, 2007, it was suggested that Plaintiff was engaging in drug-seeking behavior given her numerous prior visits seeking pain medication (Tr. 385-386); and 4) On August 7, 2007, the medical records again show that Plaintiff was drug seeking (i.e. specifically requesting narcotics) (Tr. 359).

ALJ Smith's explanation for rejecting ME Rogers' assessment is supported by substantial evidence and satisfies the "good reasons" requirement.  In rejecting said assessment ALJ Smith properly recognized that given the many references to drug seeking and noncompliance in the record, the testimony of ME Rogers' that Plaintiff

does not have an established drug seeking and compliance problem, should not be accepted.  (Tr. 23).  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### C.  ALJ Smith's Failure to Find Plaintiff Disabled Under Listing 12.03 and/or Listing 12.04

In Plaintiff's next assignment of error, she argues that ALJ Smith erred by failing to find that Plaintiff's injuries met the criteria under Listings 12.03 and 12.04.  Plaintiff contends that she meets the criteria for a presumptive award of benefits under either of these two referenced Listings based upon the significant mental impairments she allegedly suffers from.

Plaintiff argues that ALJ Smith erred in rejecting ME Rogers' assessment and thus improperly found that Plaintiff did not in fact meet or equal Listings 12.03 and 12.04.

Listing 12.03 mandates an award for:

*Schizophrenic, paranoid and other psychotic disorders:* Characterized by the onset of psychotic features with deterioration from a previous level of functioning.  The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
  A. Medically documented persistence, either continuous or intermittent, of one or more of the following: 1. Delusions or hallucinations; or 2. Catatonic or other grossly disorganized behavior; or 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following (a. Blunt affect; or b. Flat affect; or c. Inappropriate affect); or 4. Emotional withdrawal and/or isolation; AND
  B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration; OR
  C. Medically documented history of a chronic schizophrenic,

paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.04 mandates an award for:

*Affective disorders*:      Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.   The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

    A. Medically documented persistence, either continuous or intermittent, of one of the following: 1. Depressive syndrome characterized by at least four of the following (a. Anhedonia or persuasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking); or 2. Manic syndrome characterized by at least three of the following (a. Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated self-esteem; or e. Decreased need for sleep; or f. Easy distractibility; or g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking); or 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

    B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation each of extended duration; OR

    C. Medically documented history of a chronic affective disorder of

at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicated to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Contrary to Plaintiff's allegations, ALJ Smith properly rejected ME Rogers' assessment and thus properly found that Plaintiff did not in fact meet or equal Listings 12.03 and 12.04. As provided above, ALJ Smith determined that ME Rogers' testimony was inconsistent with the record. For example, ME Rogers opined that when Plaintiff was not being compliant with recommended medical care, her condition became severe enough to meet or equal the regulatory listings and that she has had at least three hospitalizations which constitute episodes of decompensation. (Tr. 843, 850-852, 878-879, 882-884). However, the Court notes that after ME Rogers was read the definition of 12.04C, he later admitted that Plaintiff did not meet these criteria. (Tr. 906). The Court agrees with ME Rogers and finds that 12.04C does not apply. The Court also finds that 12.03C does not apply.

In addition, substantial evidence supports ALJ Smith's determination that Plaintiff does not meet the requirements for Listings 12.03 and 12.04 based upon ME Rogers' failure to set forth that Plaintiff satisfied the "paragraph B" criteria in said listings provided above. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintain

15

concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.   A marked limitation means more than moderate but less than extreme.[1]   Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.   (*See Id.*).

On May 19, 2006, Dr. Waddell determined that Plaintiff has mild difficulties in activities of daily living and social functioning.  (Tr. 624).  This determination was also consistent with Plaintiff's testimony that she spends time in discussion groups, interacts with others and engages in social situations on a regular basis.  (Tr. 796, 833-834, 843).  Dr. Waddell also determined that Plaintiff has moderate difficulties with concentration, persistence, or pace.  (Tr. 624).  This finding was supported by Plaintiff's testimony that she finds it difficult to focus when she is exposed to stressful situations.  (*See* Tr. 813-814).   However, Plaintiff also stated that she is able to engage in activities such as studying the Bible without confusion.  (Tr. 833).  As for episodes of decompensation, Plaintiff has not experienced any that have been of extended duration because she has never been psychiatrically hospitalized for an extended period of time.  (Tr. 624).

In this case ME Rogers did not delineate Plaintiff's specific limitations under the "paragraph B" criteria, nor did he state how he found those limitations to meet or equal section 12.03 and 12.04 of the Listings.   Thus, the evidence supports ALJ Smith's conclusion that Plaintiff did not meet the criteria for Listings 12.03 and 12.04, as she did not satisfy the "paragraph B" criteria because her mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of

---

[1]  *Social Security,* (April 2, 2011, 3:32 PM), http://www.ssa.gov/disablity/professionals/bluebook/12.00-MentalDisorders-Adult.htm

16

decompensation, each of extended duration.  *See Buress v. Secretary of Health and Human Servs.,* 835 F.2d 139, 140 (6th Cir. 1987) (plaintiff bears the burden of proof that her impairments meet a particular Listing).  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### D.  Credibility Assessment of Plaintiff

Plaintiff next finds fault with ALJ Smith's conclusion that her testimony was not entirely credible.  Plaintiff claims that ALJ Smith unreasonably discounted her credibility by picking and choosing only those portions of the evidence which support her conclusions and ignored those portions which did not.  This argument lacks merit as ALJ Smith considered the record as a whole and provided several valid, supported reasons for finding Plaintiff less than fully credible.

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d at 475.  However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."  *Id* at 476.  (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it can be proper for an ALJ to discount the claimant's testimony.  *Warner v. Comm'r of Soc. Sec.,* 375 F.3d

at 392.

In this matter, ALJ Smith noted various factors in her decision which caused her to question Plaintiff's credibility.  For instance, she noted that Plaintiff has not always been fully compliant with treatment – refusing and declining services, often failing to appear for treatment sessions, cancelling appointments, and not being cooperative with treatment.  (Tr. 208, 279, 283, 330, 644, 646, 648, 651).  She has admitted to having substance abuse issues, (i.e., alcohol) and demonstrated drug-seeking behaviors (i.e., specifically requesting narcotics).  (Tr. 194-195, 359, 840).  As a result, ALJ Smith correctly reasoned that since Plaintiff was not truthful about her substance abuse history and appears to be in denial about her instances of drug-seeking behavior and level of her compliance, it would also suggest that she was probably less than truthful about her symptoms and limitations in an attempt to obtain disability benefits.  (Tr. 24).  Plaintiff also engages in activities which appear inconsistent with a totally debilitated individual such as: interacting with others, engaging in social activities, volunteering at a nursing home, studying the Bible, and dressing and grooming herself.  (Tr. 208, 796, 833-834, 843).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs,* 987 F.2d 1230, 1233 (6th Cir. 1993).  Here, objective tests including MRI and neurological findings showed minor and completely normal results.  (Tr. 340, 343, 372-373, 381).  In addition, the Court notes that Plaintiff's diagnosed panic and bipolar affective disorders with psychosis are in partial remission and her diagnosed posttraumatic stress disorder is in total remission.

(Tr. 314).

Therefore, because ALJ Smith found inconsistencies between the objective medical evidence and Plaintiff's testimony about the extent of her pain and limitations, it was permissible for her to discredit Plaintiff's testimony about the severity of her symptoms.  As a result, given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports ALJ Smith's decision to discredit Plaintiff's statements about the severity of her symptoms.

### E.  Plaintiff's Migraine Headaches

Plaintiff's final statement of error provides that ALJ Smith failed to consider her migraine headaches in finding that she could perform her prior work including her past job as a telephone solicitor.  Plaintiff argues that ALJ Smith failed to consider that she may have to miss more than two days per month of work because of incapacitating migraine headaches, which, based on the testimony of VE Chapman, would disqualify her from all competitive work.  (Doc. 11 at 25-26).  Plaintiff further alleges that because of her well-documented migraine headaches, she cannot sustain *any* full-time work.  (*Id.* at 25).

ALJ Smith never directly disputes Plaintiff's report that she suffers from migraine headaches and in fact agrees that her headaches are a severe impairment.  (Tr. 19, 21, 26).  An ALJ, "is required to incorporate [into a hypothetical] only those limitations accepted as credible by the finder of fact."  *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d at 1235 (6th Cir. 1993).  In this case, ALJ Smith afforded limited weight to Plaintiff's testimony regarding migraine headaches due to her inconsistent testimony and lack of truthfulness.  There was no objective evidence provided that supported her

19

contention that she would have to miss multiple days per month from work because of migraine headaches.

Based on the inconsistencies and weakness of the opinions and testimony provided by Dr. Colmenares, ME Rogers, and Plaintiff, ALJ Smith relied on the analysis of Dr. Bergsten and Dr. Waddell, who found that based on the record, Plaintiff is capable of performing simple and multiple step tasks in situations where duties are relatively static and changes can be explained to her.  (Tr. 640).  These findings were consistent with the overall medical record, including the findings noted above that Plaintiff already returned to work in September 2008 as a volunteer at a nursing home. (Tr. 796).  Thus, in regards to limitations, it was reasonable instead for ALJ Smith to provide merely for noise and hazards, such as machinery and heights (Tr. 26), rather than setting forth a maximum day work-week requirement or in the alternative, a complete bar to work as Plaintiff requests.   Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be closed

*s/Stephanie K. Bowman*
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VICTORIA LEA STONE,

        Plaintiff,

          vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:10-cv-236

Weber, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21